WILLIAM GALANTER v. MINNEAPOLIS FIRE AND
MARINE INSURANCE COMPANY.
VICTOR ROBERTSON, TRUSTEE, INTERVENER.[1]

June 13, 1924.

No. 24,005.

**Evidence sufficient that insurance policy had not been canceled.**
1. Action to recover upon a fire insurance policy. *Held* that the
evidence justified the verdict that the policy had not been canceled
by mutual consent.

**No reversible error in rulings on evidence or in charge.**
2. Record examined and found not to disclose any reversible error
either in the rulings as to the admissibility or rejection of evidence
or in the charge.

Action in the district court for Ramsey county to recover $4,900
on a fire insurance policy. The case was tried before Boerner, J.,
who at the close of the testimony denied defendant's motion for
a directed verdict in its favor against both plaintiff and intervener,
and a jury which returned a verdict in favor of intervener for
$3,881.91. From an order denying its motion for judgment not-
withstanding the verdict or for a new trial, defendant appealed.
Affirmed.

*Snyder, Gale & Richards*, for appellant.
*Mitchell, Doherty, Rumble, Bunn & Butler*, for respondent.

QUINN, J.
On October 8, 1921, appellant issued its policy, covering the
plaintiff's store building in Paynesville to the extent of $3,600, and
merchandise contained therein to the extent of $1,000. The building
was valued at about $15,000. The total insurance thereon, includ-
ing the policy in question, amounted to $11,300. H. S. Schmitt was
cashier of the Security State Bank of Paynesville and agent for

[1]Reported in 199 N. W. 886.

several insurance companies, including the appellant. Schmitt had written and looked after plaintiff's insurance for a number of years. Victor Robertson was trustee for the plaintiff and his creditors, and also credit manager of Finch, Van Slyck & McConville. Linus Bristol was one of Robertson's assistants. A. M. Shellito was the insurance adjuster.

By this action plaintiff seeks to recover upon the policy referred to. The trustee intervenes. The defendant alleges and relies upon the defense that the policy was canceled by mutual consent of the parties thereto. There was a verdict against the defendant company and in favor of the intervener for $3,881.91. From an order denying its motion for judgment or for a new trial, the defendant appealed.

The building and its contents were destroyed by fire on January 15, 1922. On December 16, 1921, the insurance company sent a letter to Schmitt directing him to cancel the policy. Schmitt testified that, upon receiving the letter, he told plaintiff that he had received a letter from the company requesting cancelation of the policy. This plaintiff denied. On December 28 the company again wrote Schmitt along the same line. On January 6 a third letter was sent to Schmitt, directing him to cancel the policy immediately. Schmitt testified that, on January 7, he called plaintiff in and showed him a letter from the company requesting the cancelation of the policies; then I told him that the policies were being canceled, and that they were canceled. Mr. Galanter said nothing; then he said he was taking an inventory and that he would see how it run, and that he might shift some of his insurance from his stock onto the building to replace the insurance which was canceled. Mr. Schultz, vice president of the bank, heard the talk between Schmitt and plaintiff, and he corroborated Schmitt. In submitting the issues, the trial court instructed the jury in part as follows:

"Now, in arriving at your conclusion in this case you have a right to take into consideration not only the testimony as to what transpired at Paynesville at the bank there previous to the 15th day of

January, 1922,—that was the date of the fire—but you have a right to take into consideration all the testimony in the case as to what transpired subsequently, that is, after that date, all the conversations, all the acts, or all the admissions, if any, which in any manner tended to characterize or indicate what the intentions of the parties were with reference to the cancelation of this policy on January 7th. You have heard the evidence as to what Mr. Schmitt, who was the agent of the insurance company at Paynesville, what he claims was said and done when Mr. Galanter was at the bank on January 7th, as Schmitt claims. Mr. Schmitt, who was the agent there, testified that Mr. Galanter was at the bank on January 7, 1922, and that he showed Mr. Galanter a letter from the defendant insurance company, which is marked Defendant's Exhibit 4, I believe, and that he told Mr. Galanter that this policy was being canceled, and that Mr. Galanter did not say anything at that time.

"Now, the court will instruct you as a matter of law, ladies and gentlemen, that, what transpired between Mr. Schmitt and Mr. Galanter at the bank on the 7th of January there as Mr. Schmitt claims, and as Mr. Schultz also testified, that is, Mr. Schmitt showing the letter, Defendant's Exhibit 4 to Mr. Galanter and telling him that the policy was being canceled, and Mr. Galanter remaining silent and saying nothing at that time—I say the court will instruct you as a matter of law that this testimony standing alone would not be sufficient to effect a cancelation of this policy. That is the judgment of the court, and I give it to you as the law of this case. But the court is of the opinion that this testimony, taken in connection with all the other testimony and the subsequent acts and conversations and admissions, as testified to by several witnesses—the court is of the opinion that this constitutes a question of fact for you to decide as to whether or not it was actually the intention of Mr. Galanter on January 7th to effect a cancelation of this policy."

In this connection and as bearing upon the proposition as to whether there had been a mutual cancelation of the policy prior to the fire, and in corroboration of the testimony of the witness Bristol, assistant credit man, a carbon copy of a letter which Bristol testi-

fied that he dictated, signed and sent to Shellito, the adjuster, together with a copy of a letter written by the defendant company to the plaintiff on January 16, 1922, was received in evidence under the objection that it was "incompetent, irrelevant and immaterial, and not the best evidence." There was no further objection made upon the trial to the reception of the carbon copy of the letter. Shellito testified that he had searched and could find no such letter. The exhibit was properly received. International Harvester Co. v. Elfstrom, 101 Minn. 263, 112 N. W. 252, 12 L. R. A. (N. S.) 343, 118 Am. St. 626, 11 Ann. Cas. 107. Humphrey v. Monida & Y. Stage Co. 120 Minn. 94-96, 139 N. W. 132. The letter written by Bristol, it will be noted, has reference to a letter sent by the insurance company to the plaintiff on January 16, after the fire but before the company was informed that there had been a fire. It is as follows:

"Minneapolis, Minnesota
January 16, 1922

"Mr. William Galanter,
"Paynesville, Minnesota.
"Dear Sir:

"We beg to advise you that we have repeatedly asked for the cancelation of policies 261251 and 261253, covering your building and stock located on Lots 3 and 4, Block 3, Hayne's Addition to Paynesville.

"Kindly accept notice that we will under no circumstances admit of liability in case of loss, and you should immediately return the policies to our agent, Mr. H. R. Schmitt.

"Yours very truly,
"Walter C. Leach,
"Secretary."

It is urged that it was error to reject the offer in evidence of page 13 of a policy register book kept by the bank. Schmitt had, on January 7, made a notation on that page as follows: "Returned premium, $53.78." This book was the bank's private record. There was a separate one for each insurance company. The entry was

never seen by the plaintiff. The premium had not been returned as therein indicated. The register was not a book of account. The plaintiff received no credit on the bank books for any return premium until in the month of August following. We see no error in the exclusion of the notation.

In its charge the court made the following statement to the jury: "There is no dispute that if this policy was in force (after January seventh) that it was in force on the 15th day of January, 1922." The words in parenthesis were not used by the judge in his charge. But no question is raised but what the policy was in force until that time, and it is not claimed that it was canceled subsequent to that date. The jury was given clearly to understand, by other statements in the charge, that it was to determine the question whether the policy was canceled on that very day. It could not have been misled by the omission of the three words in parenthesis.

The contention that Schmitt represented the insured rather than the insurer seems to be trivial. He wrote the policy, had authority to cancel it on behalf of the insurer, and the appellant relies upon his acts in its behalf, in effecting the alleged cancelation of January 7. It is not claimed that an insurance policy can be canceled by one of the parties thereto, except by a strict compliance with its terms as to notice, etc., unless such compliance is waived by the other party. All that appellant attempted to do in the way of cancelation was done through Schmitt, save alone the sending of the letter of January 16 to the insured, which it asked to have accepted as notice of cancelation. Bristol was called for cross-examination under the statute, by appellant. Clearly he was not in a class of adverse witnesses, subject to call under the statute.

We find no reversible error either in the charge or in the rulings upon the reception or rejection of evidence, and are satisfied that the verdict was fully justified by the evidence.

Affirmed.